# Exhibit A

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY |
|---|---|
| | *(SOLO PARA USO DE LA CORTE)* |

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
SEE ATTACHED  *Tetra Tech, Inc.*

**YOU ARE BEING SUED BY PLAINTIFF:**

*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
SEE ATTACHED  *San Francisco Shipyard Residents*

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center *(www.courtinfo.ca.gov/selfhelp)*, your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site *(www.lawhelpcalifornia.org)*, the California Courts Online Self-Help Center *(www.courtinfo.ca.gov/selfhelp)*, or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| CASE NUMBER: *(Número del Caso):* |
|---|
| CGC-19-578509 |

The name and address of the court is:
*(El nombre y dirección de la corte es):*
SAN FRANCISCO SUPERIOR COURT
400 McAllister Street
San Francisco, CA 941

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Bradley R. Bowles/Jonathan W. Lee 202722/285323 BOWLES & VERNA LLP
2121 N. California Blvd., Suite 875 (925) 935-3300
Walnut Creek, CA 94596

DATE:   AUG 2 0 2019        DEPUTY CLERK  Clerk, by _____, Deputy
*(Fecha)*                  *(Secretario)*                 *(Adjunto)*

BOWMAN

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

CEB | Essential
ceb.com | Forms

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

ORIGINAL

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| San Francisco Shipyard Residents v. Tetra Tech, Inc. | CGC-19-578509 |

## INSTRUCTIONS FOR USE

➢ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
➢ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

[X] Plaintiff     [ ] Defendant     [ ] Cross-Complainant     [ ] Cross-Defendant

SAN FRANCISCO SHIPYARD RESIDENTS, JORGE HIDROBO; LIEN CHI; CORY GROOM;
CICELY TAN; RILEY SMITH;  HEATHER WATKINS; HONORIA BAXTER; JEDIDIAH
BURACK; UNTRAY BROWN; ERIC S. VANDERPOOL; JOSEPH FRAGA; SHANNON R.
HETRICK; MATTHEW VO; MANDA CHOI; ANIL VITTAL; JANJRI DESAI; MENG HUANG;
SIYUN WANG; WILFRED YUN; KWOK YEE KARINA YIP; BRIAN YEE; BRETT HANLON;
ANTHONY BOOTH; CASEY WOO; LARA WOO; DAVID YU; JERROLD POLANSKY, and ROE
PLAINTIFFS 1-1,000

Page _____ of _____

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev January 1, 2007]
CEB | Essential
ceb.com | Forms

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**     8418-000

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| San Francisco Shipyard Residents v. Tetra Tech, Inc. | CGC-19-578509 |

**INSTRUCTIONS FOR USE**

➢ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
➢ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff   ☒ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

TETRA TECH, INC.; TETRA TECH EC, INC.; LENNAR CORPORATION; HPS1 BLOCK
50, LLC; HPS1 BLOCK 51, LLC; HPS1 BLOCK 53, LLC; HPS1 BLOCK 54, LLC;
FIVE POINT HOLDINGS, LLC.; HPS DEVELOPMENT CO., L.P.; ANDREW BOLT; BILL
DOUGHERTY; EMILE HADDAD and DOES 1-1000 Inclusive

Page _____ of _____

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

CEB Essential
ceb.com Forms

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**     8418-000

BRADLEY R. BOWLES (#202722)
JONATHAN W. LEE (#285323)
Bowles & Verna LLP
2121 N. California Blvd., Suite 875
Walnut Creek, California 94596
Telephone: (925) 935-3300
Facsimile: (925) 935-0371
Email: bbowles@bowlesverna.com
        jlee@bowlesverna.com

Attorneys for Plaintiffs

**F I L E D**
Superior Court of California
County of San Francisco

AUG 20 2019

CLERK OF THE COURT
BY: _____
                    Deputy Clerk

BOWMAN LXF

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

SAN FRANCISCO SHIPYARD RESIDENTS,
JORGE HIDROBO; LIEN CHI; CORY GROOM;
CICELY TAN; RILEY SMITH; HEATHER
WATKINS; HONORIA BAXTER; JEDIDIAH
BURACK; UNTRAY BROWN; ERIC S.
VANDERPOOL; JOSEPH FRAGA; SHANNON
R. HETRICK; MATTHEW VO; MANDA CHOI;
ANIL VITTAL; JANJRI DESAI; MENG HUANG;
SIYUN WANG; WILFRED YUN; KWOK YEE
KARINA YIP; BRIAN YEE; BRETT HANLON;
ANTHONY BOOTH; CASEY WOO; LARA
WOO; DAVID YU; JERROLD POLANSKY, and
ROE PLAINTIFFS 1-1,000,

        Plaintiffs,

v.

TETRA TECH, INC.; TETRA TECH EC, INC.;
LENNAR CORPORATION; HPS1 BLOCK 50,
LLC; HPS1 BLOCK 51, LLC; HPS1 BLOCK 53,
LLC; HPS1 BLOCK 54, LLC; FIVE POINT
HOLDINGS, LLC.; HPS DEVELOPMENT CO.,
L.P.; ANDREW BOLT; BILL DOUGHERTY;
EMILE HADDAD and DOES 1-1000 Inclusive,

        Defendants.

Case No. **CGC-19-578509**

**COMPLAINT FOR DAMAGES**

Bowles & Verna LLP
2121 N. California
Suite 875
Walnut Creek 94596

1

COMPLAINT FOR DAMAGES

1      Plaintiffs SAN FRANCISCO SHIPYARD RESIDENTS, JORGE HIDROBO; LIEN CHI;

2      CORY GROOM; CICELY TAN; RILEY SMITH;  HEATHER WATKINS; HONORIA BAXTER;

3      JEDIDIAH BURACK; UNTRAY BROWN; ERIC S. VANDERPOOL; JOSEPH FRAGA;

4      SHANNON R. HETRICK; MATTHEW VO; MANDA CHOI; ANIL VITTAL; JANJRI DESAI;

5      MENG HUANG; SIYUN WANG; WILFRED YUN; KWOK YEE KARINA YIP; BRIAN YEE;

6      BRETT HANLON; ANTHONY BOOTH; CASEY WOO; LARA WOO; DAVID YU; JERROLD

7      POLANSKY and Roe Plaintiffs1-1,000, on behalf of themselves, complain of Defendants TETRA

8      TECH, INC.; TETRA TECH EC, INC.; LENNAR CORPORATION; HPS1 BLOCK 50, LLC; HPS1

9      BLOCK 51, LLC;  HPS1 BLOCK 53, LLC;  HPS1 BLOCK 54, LLC; FIVE POINT HOLDINGS,

10      LLC.; HPS DEVELOPMENT CO., L.P.; ANDREW BOLT; BILL DOUGHERTY; EMILE HADDAD

11      and DOES 1-1000 Inclusive.

12                         **PARTIES, JURISDICTION AND VENUE**

13      **Plaintiffs**

14      1.      Plaintiffs JORGE HIDROBO and LIEN CHI are individuals who own and reside at 555

15      Innes Avenue, #305, San Francisco, CA 94124.

16      2.      Plaintiffs CORY GROOM and CECILY TAN are individuals who own and reside at

17      555 Innes Avenue, #303, San Francisco, CA 94124.

18      3.      Plaintiffs RILEY SMITH and HEATHER WATKINS are individuals who own 51

19      Donahue Street, #318, San Francisco, CA 94124.

20      4.      Plaintiffs HONORIA BAXTER is an individual who owns and resides at 451 Donahue

21      Street, #307, San Francisco, CA 94124.

22      5.      Plaintiffs JEDIDIAH BURACK and UNTRAY BROWN are individuals who own and

23      reside at 175 Avocet Way, San Francisco, CA 94124.

24      6.      Plaintiffs ERIC S. VANDERPOOL and JOSEPH FRAGA are individuals who own and

25      reside at 207 Friedell Street, San Francisco, CA 94124.

26      7.      Plaintiffs SHANNON R. HETRICK is an individual who owns and resides at 551

27      Hudson Avenue, #202, San Francisco, CA 94124.

28      8.      Plaintiffs MATTHEW VO and MANDA CHOI are individuals who own and reside at

1    216 Friedell Street, San Francisco, CA 94124.

2        9.      Plaintiffs ANIL VITTAL and JANJRI DESAI are individuals who own and reside at

3    570 Innes Avenue, #302, San Francisco, CA 94124.

4        10.     Plaintiffs MENG HUANG and SIYUAN WANG are individuals who own and reside at

5    226 Coleman Street, San Francisco, CA 94124.

6        11.     Plaintiffs WILFRED YUN and KWOK YEE KARINA YIP are individuals who own

7    and reside at 224 Friedell Street, San Francisco, CA 94124.

8        12.     Plaintiffs BRIAN YEE is an individual who owns and resides at 551 Hudson Avenue,

9    Unit 302, San Francisco, CA 94124.

10       13.     Plaintiffs BRETT HANLON and ANTHONY BOOTH are individuals who own and

11   reside at 551 Hudson Avenue, #204, San Francisco, CA 94124.

12       14.     Plaintiffs CASEY WOO and LARA WOO are individuals who own and reside at 551

13   Hudson Avenue, #301, San Francisco, CA 94124.

14       15.     Plaintiffs DAVID YU is an individual who owns and resides at 451 Donahue St #304,

15   San Francisco, CA 94124.

16       16.     Plaintiff JERROLD POLANSKY is an individual who owns and resides at 551 Hudson

17   Avenue, #10, San Francisco, CA 94124

18       17.     ROE PLAINTIFFS 1-1000 are owners of real property of the Shipyard Community at

19   the Hunters Point Naval Shipyard, also known as The SF Shipyard, which was designed and built by

20   Defendants LENNAR CORPORATION, HPS1 BLOCK 50, LLC; HPS1 BLOCK 51, LLC; HPS1

21   BLOCK 53, LLC; HPS1 BLOCK 54, LLC, and FIVE POINT HOLDINGS, LLC, who have not to date

22   discovered the elements of their causes of action. This Action will be amended to include those ROE

23   PLAINTIFFS when those PLAINTIFFS have ascertained and discovered each element of each cause

24   of action against each of the named Defendants herein.

25       **Defendants**

26       18.     Defendant TETRA TECH, INC. ("TTI") is a Delaware corporation with its headquarters

27   and principal place of business located in Pasadena, California. TTI does business in the State of

28   California, including in San Francisco.

COMPLAINT FOR DAMAGES

19.     Defendant TETRA TECH EC, INC. ("TTEC" and, collectively with Tetra Tech, Inc.. "Tetra Tech") is a wholly owned subsidiary of Tetra Tech, Inc. with its headquarters and principal place of business located in Morris Plains, New Jersey. TTEC does business in California, including in San Francisco.

20.     Defendant LENNAR CORPORATION ("Lennar") is a Delaware corporation with its headquarters and principal place of business located in Miami, Florida. Lennar, Corporation does business in California, including in San Francisco.

21.     Defendant HPS1 BLOCK 50, LLC ("HPS1 Block 50" and, collectively with Lennar Corporation, "Lennar") is a privately-owned subsidiary of Lennar Corporation. HPS1 Block 50, LLC does business in California, including in San Francisco.

22.     Defendant HPS1 BLOCK 51, LLC ("HPS1 Block 51" and, collectively with Lennar Corporation, "Lennar") is a privately-owned subsidiary of Lennar Corporation. HPS1 Block 51, LLC does business in California, including in San Francisco.

23.     Defendant HPS1 BLOCK 53, LLC ("HPS1 Block 53" and, collectively with Lennar Corporation, "Lennar") is a privately-owned subsidiary of Lennar Corporation. HPS1 Block 53, LLC does business in California, including in San Francisco.

24.     Defendant HPS1 BLOCK 54, LLC ("HPS1 Block 54" and, collectively with Lennar Corporation, "Lennar") is a privately-owned subsidiary of Lennar Corporation. HPS1 Block 54, LLC does business in California, including in San Francisco.

25.     Defendant FIVE POINT HOLDINGS, LLC ("FivePoint") is a Delaware corporation with its headquarters and principal place of business located in Irvine, California. FivePoint was a wholly owned subsidiary of Defendant Lennar Corporation until May 2017. Lennar Corporation maintains a substantial ownership interest in FivePoint. FivePoint has described itself as the "largest developer of mixed-use communities in coastal California."

26.     Defendant HPS DEVELOPMENT CO., L.P. ("HPS Development") is a limited partnership organized in Delaware with its principle place of business in San Francisco, CA. Upon information and belief, HPS Development Co., is subsidiary of a joint venture managed by Defendant Lennar Corporation.

27.     Defendant ANDREW BOLT ("Bolt" and, collectively with Tetra Tech, Inc. and Tetra Tech EC, Inc., "Tetra Tech") serves as President of Tetra Tech EC, Inc. and previously held the title of Senior Vice President, Remediation and Program Manager; he had direct control over the Tetra Tech's fraudulent remediation at HPNS. Upon information and belief, Bolt is a resident of the Greater San Diego area in California.

28.     Defendant BILL DOUGHERTY ("Dougherty" and, collectively with Tetra Tech, Inc. and Tetra Tech EC, Inc., "Tetra Tech") served as project manager for Tetra Tech EC, Inc. at Hunters Point Naval Shipyard (herein referred to as "HPNS") and had direct control over the Tetra Tech's fraudulent remediation at HPNS. Dougherty started in this position in or before 2008. Upon information and belief, Dougherty is a resident of the Greater San Diego area in California.

29.     Defendant EMILE HADDAD ("Haddad") has served as FivePoint's Chairman, CEO and President since May 2016. He worked for Lennar from the mid-1990s until 2009 and has worked for FivePoint and/or its affiliates in executive positions from 2009 to present. Upon information and belief, Haddad is a resident of Laguna Hills, California.

30.     Plaintiffs do not know the true names or capacities, whether individual, corporate, or otherwise, of other potential Defendants sued herein under the fictitious names DOES 1 through 100 and are therefore sued pursuant to Code of Civil Procedure § 474. Plaintiffs will amend this Complaint to show their true names and capacities if and when they are ascertained.

31.     At all times herein mentioned, Defendants, and each of them, hereinabove, were the agents, servants, employees, partners, aiders and abettors, co-conspirators, and/or joint venturers of each of the other Defendants named herein and were at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, enterprise, conspiracy, and/or joint venture, and each Defendant has ratified and approved the acts of each of the remaining Defendants. Each of the Defendants aided and abetted, encouraged, and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiffs, as alleged herein. In taking action to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoings complained of, as alleged herein, each of the Defendants acted with an awareness of his/her/its primary wrongdoing and realized that his/her/its conduct would substantially assist the accomplishment of the

1   wrongful conduct, wrongful goals, and wrongdoing.

2       32.    Such agents, aiders and abettors include the two Tetra Tech employees, Justin Hubbard

3   and Stephen Rolfe, who each pled guilty in federal court to crimes related to Tetra Tech's fraud and

4   cover-up, and their supervisors and/or anyone else who directed, suggested, or otherwise encouraged

5   Hubbard and Rolfe to engage in such crimes.

6       33.    Plaintiffs are informed and believe that each of the Doe Defendants is responsible in

7   some manner for the events and happenings herein alleged, either individually, as an agent, principal,

8   joint-venturer, employer, employee, or otherwise, and that said Defendants negligently acted or failed

9   to act and that such negligence proximately caused the injuries and damages hereinafter set forth.

10   Plaintiffs are informed and believe, and on that basis allege, that each of those Defendants was in some

11   manner legally responsible for the events and happenings alleged in this Complaint and for damages

12   suffered by the Plaintiffs.

13       34.    Plaintiffs are informed and believe, and thereupon allege that at all times mentioned

14   herein, each of the Defendants was the agent and/or employee of each of the remaining Defendants and

15   was, at all times, acting within the purpose and scope of such agency and employment.

16   **VENUE AND JURISDICTION**

17       35.    Venue is proper in the County of San Francisco in the State of California because it is

18   where the subject torts took place, and where the parties entered into contracts related to the sale of

19   property.

20       36.    An award of compensatory damages is sought in an amount exceeding the minimum

21   jurisdiction of this court and to be proven at trial.

22   **NATURE OF CASE AND GENERAL ALLEGATIONS**

23       37.    Plaintiffs hereby re-allege and incorporate herein by reference each and every allegation

24   contained in the previous paragraphs as though fully set forth herein.

25       38.    This action is brought to remedy unlawful conduct by Defendants that have

26   substantially and severely impacted Plaintiffs who purchased residential properties that were built by

27   Defendants Lennar, HPS1 Block 50, LLC, HPS1 Block 51, LLC, HPS1 Block 53, LLC, HPS1 Block

28   54, LLC, FivePoint and HPS Development on land previously used as a United States military facility.

This area historically has been known as the Hunters Point Naval Shipyard (herein referred to as "HPNS") and, at all relevant times, was and is currently marketed as The SF Shipyard (herein referred to as "The SF Shipyard"). Specifically, the residential properties were built on a portion of HPNS known as Parcel A.

39.    HPNS is located in southeastern San Francisco. It was a former naval base and nuclear warfare research laboratory. HPNS was also used as a cleaning dock providing ship repairs and maintenance to ships returning from atomic bomb testing in the Pacific Ocean. HPNS also housed the Naval Radiological Defense Laboratory, which studied the effects of radiation and nuclear weapons and was in operation from 1946 to 1969. In total, the Navy operated HPNS until 1974. Thereafter, HPNS was leased to a commercial ship repair company, Triple A Machine Shop, which repaired commercial and Naval vessels until 1986.

40.    In 1988, HPNS entered the Base Realignment and Closure Program, a federal program created to oversee the cleanup and transfer of military installations to public or private entities for redevelopment.

41.    In 1989, the United States Environmental Protection Agency evaluated and designated HPNS as a Superfund site. The EPA also placed HPNS on the National Priorities List in response to concerns about the effects of past hazardous wastes created by historical shipyard activities. The National Priorities List (NPL) was developed under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), which was created by Congress in 1980 to identify, investigate and clean up hazardous wastes. The cleanup and remediation were to be paid for out of a trust fund established by CERCLA.

42.    Beginning around 2002, the U.S. Navy contracted with Defendants Tetra Tech, Inc. and/or Tetra Tech EC, Inc. (herein collectively referred to as "Tetra Tech") to test and perform remediation work at HPNS. As part of the testing work, Tetra Tech was to remove soil samples and send them to a laboratory for analysis to determine whether the samples contained nuclear and radioactive materials above an acceptable level. The process required additional remediation measures if the sampling results indicated levels of nuclear and/or radioactive materials that were higher than allowable. Tetra Tech performed this work from 2002 to 2016.

43.     As part of its duties, Tetra Tech was to perform testing and remediation work on Parcel A, where the residential properties purchased by Plaintiffs would ultimately be erected. In 2004, the State of California and other agencies declared Parcel A free of radioactive hazards and the Superfund designation was removed from this Parcel. This finding was based largely on remediation records provided by Defendant Tetra Tech, as well as a very limited and cursory sweep of a "scanner van."

44.     Ultimately, Parcel A was transferred from the United States Navy to the City of San Francisco for development in 2004. The City of San Francisco subsequently passed Parcel A to Lennar and its partners on or about April 2005, all while Tetra Tech continued to perform work at HPNS and Parcel A.

45.     Beginning in 2012, whistleblowers began reporting that Tetra Tech (including but not limited to its agents, employees, and contractors) was falsifying their soil samples and laboratory results. These actions included, but are not limited to, directing employees to obtain clean dirt and substitute it for samples from marked test areas. Other actions included mislabeling bags of dirt and marking them with different locations than from where the samples were obtained.

46.     A Navy investigation concluded that there was evidence of data manipulation or falsification on nearly half of the soil samples taken by Tetra Tech. The Environmental Protection Agency and two California state agencies found more widespread falsification, and these subsequent reviews concluded that 97 percent of the samples needed to be retested.

47.     Beginning in 2013, Defendants Lennar, HPS1 Block 50, HPS1 Block 51, HPS1 Block 53, HPS1 Block 54, FivePoint and HPS Development started building residential properties, and began selling these properties in 2014. Defendants have sold around 350 newly built homes on Parcel A at The SF Shipyard. Lennar knew or should have known of the toxic waste present on the land at The SF Shipyard, including Parcel A, and should have informed potential buyers of this toxic waste. At all relevant times, Defendants have asserted that the properties built on Parcel A were safe to inhabit. Further, Lennar did not disclose the fact that HPNS served as the endpoint for ships irradiated during hydrogen bomb tests, the residue of which was sandblasted onto the land at HPNS, including Parcel A: residues which include not only radioactive materials, but also lead paint, exposure to either of which causes long-term, potentially debilitating health issues. Lennar did not disclose the potential health

COMPLAINT FOR DAMAGES

1    hazards of living on or near a former EPA Superfund and nuclear warfare testing site, nor did it

2    disclose the toxic waste still contaminating the area.

3        48.    Prior to purchasing their homes, Plaintiffs did not know of the toxic waste's continuing

4    presence or its health consequences, and so therefore did not factor that information in when

5    determining the value and worth of the homes at the time of purchase. The homes are now worth

6    substantially less than they would have been in a world where Tetra Tech had responsibly remediated

7    HPNS, as it had agreed to and was well-compensated to do, and considerably less than the amount

8    Plaintiffs would have otherwise expected the value to be had the property been as clean and healthy as

9    they were promised. Notably, since purchasing their respective homes, a highly radioactive source was

10   found on Parcel A.

11       49.    In addition to the potential health hazards and exposure to radioactive and nuclear

12   materials, Plaintiffs originally purchased their homes at The SF Shipyard with the assurance from

13   Defendants that it would be a safe environment and community to plant roots and make their lives in

14   San Francisco. However, given the history of the radioactive and nuclear work done at HPNS, along

15   with the news that the Tetra Tech remediation work was falsified and fraudulent, the promises of The

16   SF Shipyard's potential to become a thriving and prosperous community have been delayed and

17   diminished, if not destroyed all together.

18       50.    As a result of the fraudulent remediation work performed by Tetra Tech, the

19   misrepresentations and failed promises made by Lennar and its partners, and the likelihood of

20   subterranean toxic materials existing under and/or around Plaintiffs' homes, at least three major banks

21   have stopped all lending at The SF Shipyard. Plaintiffs are now living in a community based on a

22   vision of future promises that have failed to come to fruition.

23       51.    Plaintiffs' homes have suffered substantial diminution of value, as the market and buyer

24   interest in The SF Shipyard has all but evaporated due to the well-documented and publicized acts and

25   omissions of the Defendants. Additionally, construction and expansion of The SF Shipyard have been

26   put on hold, further distancing Plaintiffs from the idyllic and vibrant community they were promised.

27       52.    The toxic waste at HPNS can lead, and has led, to serious health complications,

28   including deadly cancer, especially as residents are potentially exposed to toxic waste in the air and on

---

9

COMPLAINT FOR DAMAGES

1    the ground. Plaintiffs do not, and cannot, know if or when the environmental harm will be remediated.

2    Retesting and remediating the land will be a long, time-consuming, and arduous process, which will

3    only be made more challenging due to the fact that residential properties and other structures are now

4    erected on parts of the land in question.

5        53.      Defendants have created or assisted in the creation of a public nuisance. Every act of

6    malfeasance committed by each Defendant since the late 1990s subjects each Defendant to liability for

7    public nuisance because there is no statute of limitations for a public nuisance claim. (See Civ. Code, §

8    3490).

9        54.      Tetra Tech's conduct, both individually and collectively, has violated and continues to

10    violate the law of permanent public nuisance, under common law and Civ. Code, §§ 3479 and 3480,

11    the law of permanent private nuisance, under common law and Civ. Code §§ 3479 and 3481. the

12    Unfair Competition Law, Bus. & Prof. Code, § 17200 *et seq.,* and constitutes negligence, fraud, and

13    negligent misrepresentation.

14        55.      The conduct of Lennar, HPS1 Block 50, HPS1 Block 51, HPS1 Block 53, HPS1 Block

15    54, FivePoint and HPS Development, both individually and collectively, has violated and continues to

16    violate Civ. Code § 1102.13 (failure to disclose material facts affecting a property subject to sale), the

17    Unfair Competition Law, Bus. & Prof. Code, § 17200 *et seq.,* and constitutes negligence, fraud, and

18    negligent misrepresentation.

19        56.      In 2017, two Tetra Tech supervisors at the HPNS site, Justin Hubbard and Stephen

20    Rolfe, pleaded guilty to the criminal destruction, alteration, or falsification of records in federal

21    investigations, in violation of 18 U .S.C. § 1519. Each was fined and sentenced to time in federal

22    prison.

23        57.      Tetra Tech's on-site supervisors and/or managers participated in and directed Tetra

24    Tech's agents and employees to engage in the acts of fraud alleged in this Complaint, in a widespread

25    plot to defraud the U.S. Navy, the City of San Francisco, and purchasers of real property at The SF

26    Shipyard.

27        58.      Each of the acts (and failures to act) described in this Complaint are ascribed to

28    Defendants' agents and employees, under Defendants' direction and control. These agents and

1  employees were, at all relevant times, acting within the course and scope of their agency and/or

2  employment, with the permission, consent and authorization of Defendants. The doctrine of

3  Respondent Superior makes an employer vicariously liable for the torts of its employees and agents

4  committed within the scope of employment, whether or not such acts were criminal torts.

5      59.      Defendants knew or should have known that their agents and employees would likely

6  carry out the orders of their supervisors and managers, even if those orders were immoral, unethical,

7  unlawful, fraudulent, or criminal. Defendants endorsed and ratified the negligent, below-industry-

8  standard, fraudulent, illegal and criminal behavior of their employees and agents at HPNS.

9                    **FIRST CAUSE OF ACTION**

10                    **PERMANENT PUBLIC NUISANCE**

11                    **(Against All Defendants)**

12      60.      Plaintiffs hereby re-allege and incorporate herein by reference each and every allegation

13  contained in the previous paragraphs as though fully set forth herein.

14      61.      At all times mentioned herein, Plaintiffs had the right to own, enjoy, and use their

15  residences and property free of interference by Defendant Tetra Tech and/or its officers, employees,

16  and/or agents, whose acts and omissions created a permanent public nuisance. Said acts and omissions

17  include, but are not limited to, the failure to remediate the nuclear and toxic materials at HPNS as

18  contracted, and falsifying soil sample testing results to show the toxic and nuclear materials at HPNS

19  were at acceptable levels.

20      62.      Defendants Lennar, HPS1 Block 50, HPS1 Block 51, HPS1 Block 53, HPS1 Block 54,

21  FivePoint and/or HPS Development and/or their officers, employees, and/or agents acquired Parcel A

22  in or around 2004, and have maintained a continuous and demonstrable presence within The SF

23  Shipyard community to date. Upon information and belief, Defendants Lennar, HPS1 Block 50, HPS1

24  Block 51, HPS1 Block 53, HPS1 Block 54, FivePoint and/or HPS Development had actual and/or

25  constructive notice that Defendant Tetra Tech was not performing its contractual duties and failed to

26  perform remediation work and accurate soil sample testing at HPNS, including in and around Parcel A.

27      63.      Despite this actual and/or constructive notice, Defendant Lennar, HPS1 Block 50, HPS1

28  Block 51, HPS1 Block 53, HPS1 Block 54,  FivePoint and/or HPS Development did not pursue its own

1   investigation into Tetra Tech's acts and omissions, nor did they take any action to perform remediation

2   or soil sample testing on their own. Furthermore, Lennar, HPS1 Block 50, HPS1 Block 51, HPS1

3   Block 53, HPS1 Block 54, FivePoint, and/or HPS Development continued to advertise and market

4   residential properties at The SF Shipyard without notifying future homeowners of Tetra Tech's acts

5   and omissions in regard to the remediation and soil sample testing in Parcel A. Additionally,

6   Defendants Lennar, HPS1 Block 50, HPS1 Block 51, HPS1 Block 53, HPS1 Block 54, FivePoint,

7   and/or HPS Development failed to notify any local, state or federal government agencies of their actual

8   and/or constructive notice of Tetra Tech's performance, or lack thereof, of its contractual duties at

9   HPNS, including in and around Parcel A. At all relevant times, Defendants Lennar, HPS1 Block 50,

10  HPS1 Block 51, HPS1 Block 53, HPS1 Block 54, FivePoint and/or HPS Development continued to

11  represent that HPNS, including Parcel A and The SF Shipyard, was a safe and inhabitable community

12  free of any toxic or nuclear materials.

13      64.     By failing to notify its clients, the community, the relevant governmental authorities,

14  and the public at large, Defendants, and/or each of them, permitted a harmful and/or contaminated

15  condition to exist on the property despite making misrepresentations to the contrary.

16      65.     Said acts and omissions created a nuisance that was harmful to health, were indecent or

17  offensive to the senses, and obstructed free use of the property so as to interfere with the comfortable

18  enjoyment of property. Furthermore, said acts and omissions were such that a reasonable person would

19  be annoyed or disturbed by the condition of HPNS, including Parcel A and The SF Shipyard.

20      66.     Additionally, the seriousness of the harm resulting from the acts and omissions of

21  Defendants outweighed the social utility of their conduct. Defendants allowed this dangerous condition

22  to exist, and said acts and omissions exposed, and continue to expose The SF Shipyard community to

23  the dangers and consequences of toxic and nuclear waste.

24      67.     The deprivation of Plaintiffs' rights to free enjoyment and use of their property is

25  anticipated and expected to continue indefinitely, as there are no comprehensive, concrete and

26  approved future remediation plans. Consequently, the property values have been permanently,

27  unreasonably, substantially and negatively impacted, as the reputation of The SF Shipyard is now

28  irreparably stained by Defendants' acts and omissions. The diminution in value of these properties is

COMPLAINT FOR DAMAGES

1    anticipated to continue indefinitely.

2        68.    Plaintiffs did not consent to the aforementioned conduct of Defendants, and Plaintiffs

3    suffered harm that was different from the type of harm suffered by the general public, including but not

4    limited to: (a) the diminution of their property value; (b) inability to sell their property; and/or (c)

5    inability to sell their property for the value it would be worth if not contaminated.

6        69.    The conduct of Defendants, and/or each of them, was a substantial factor in causing

7    Plaintiffs' harm, and the seriousness of the harm outweighs the public benefit of Defendants' conduct.

8        70.    The public nuisance created, perpetuated, and maintained by Defendants is permanent

9    and cannot be abated. Abatement is impractical because up to 97% of the property is estimated to need

10    retesting and possible remediating. Tetra Tech alone was paid $300 million to test and remediate the

11    property. A review of Tetra Tech's work will cost in excess of $300 million. Further, such remediation

12    does not resolve the harm incurred as a byproduct of Defendants' actions.

13        71.    As a direct and proximate result of the nuisance created and maintained by Defendants,

14    Plaintiffs have been and will be further damaged, in a sum to be established by proof at trial, by the

15    diminution in the value of, and future harm to, their property, as more fully described above.

### SECOND CAUSE OF ACTION

### PERMANENT PRIVATE NUISANCE

### (Against All Defendants)

19        72.    Plaintiffs hereby re-allege and incorporate herein by reference each and every allegation

20    contained in the previous paragraphs as though fully set forth herein.

21        73.    At all times mentioned herein, Plaintiffs, as owners of their residential properties, had

22    the right to enjoy and use their residences and property free of interference by Defendant Tetra Tech

23    and/or its officers, employees, and/or agents, whose acts and omissions created a permanent private

24    nuisance. Said acts and omissions include, but are not limited to, the failure to remediate the nuclear

25    and toxic materials at HPNS as contracted, and falsifying soil sample testing results to show the toxic

26    and nuclear materials at HPNS were at acceptable levels.

27        74.    Defendants Lennar, HPS1 Block 50, HPS1 Block 51, HPS1 Block 53, HPS1 Block 54,

28    FivePoint and/or HPS Development and/or their officers, employees, and/or agents acquired Parcel A

1  in or around 2004, and have maintained a continuous and demonstrable presence within the Shipyard

2  community to date. Upon information and belief, Defendants Lennar, HPS1 Block 50, HPS1 Block 51,

3  HPS1 Block 53, HPS1 Block 54, FivePoint, and/or HPS Development had actual and/or constructive

4  notice that Defendant Tetra Tech was not performing its contractual duties and failed to perform

5  remediation work and accurate soil sample testing at HPNS, including in and around Parcel A.

6      75.   Despite this actual and/or constructive notice, Defendant Lennar, HPS1 Block 50, HPS1

7  Block 51, HPS1 Block 53, HPS1 Block 54, FivePoint and/or HPS Development did not pursue its own

8  investigation into Tetra Tech's acts and omissions, nor did they take any action to perform remediation

9  or soil sample testing on their own. Furthermore, Lennar, HPS1 Block 50, HPS1 Block 51, HPS1

10  Block 53, HPS1 Block 54, FivePoint, and/or HPS Development continued to advertise and market

11  residential properties at The SF Shipyard without notifying future homeowners of Tetra Tech's acts in

12  omissions in regards to the remediation and soil sample testing at HPNS, including in and around

13  Parcel A. Additionally, Defendants Lennar, HPS1 Block 50, HPS1 Block 51, HPS1 Block 53, HPS1

14  Block 54, FivePoint, and/or HPS Development failed to notify any local, state or federal government

15  agencies of their actual and/or constructive notice of Tetra Tech's performance, or lack thereof, of its

16  contractual duties at HPNS, including in and around Parcel A. At all relevant times, Defendants

17  Lennar, HPS1 Block 50, HPS1 Block 51, HPS1 Block 53, HPS1 Block 54, FivePoint and/or HPS

18  Development continued to represent that HPNS, including in and around Parcel A, was a safe and

19  inhabitable community free of any toxic or nuclear materials.

20      76.   By failing to notify its clients, the community, the relevant governmental authorities,

21  and the public at large, Defendants Lennar, HPS1 Block 50, HPS1 Block 51, HPS1 Block 53, HPS1

22  Block 54, FivePoint, and HPS Development, and/or each of them, permitted a harmful and/or

23  contaminated condition to exist on the property despite making misrepresentations to the contrary.

24      77.   Said acts and omissions created a nuisance that was harmful to health, were indecent or

25  offensive to the senses, and obstructed free use of the property so as to interfere with the comfortable

26  use and enjoyment of their property. Furthermore, said acts and omissions were such that a reasonable

27  person would be annoyed or disturbed by the condition of HPNS, including Parcel A.

28      78.   Additionally, the seriousness of the harm resulting from the acts and omissions of

14

COMPLAINT FOR DAMAGES

1  Defendants outweighed the public benefit of their conduct. Defendants allowed this dangerous

2  condition to exist, and said acts and omissions exposed, and continue to expose The SF Shipyard

3  community to the dangers and consequences of toxic and nuclear waste.

4       79.    The deprivation of Plaintiffs' rights to free enjoyment and use of their property is

5  anticipated and expected to continue indefinitely, as there are no comprehensive, concrete and

6  approved future remediation plans. Consequently, the property values have been permanently,

7  unreasonably, substantially and negatively impacted, as the reputation of The SF Shipyard community

8  is now irreparably stained by Defendants' acts and omissions. The diminution in value of these

9  properties is anticipated to continue indefinitely.

10       80.    The conduct of Defendants, and/or each of them, was a substantial factor in causing

11  Plaintiffs' harm, and the seriousness of the harm outweighs the public benefit of Defendants' conduct.

12       81.    The private nuisance created, perpetuated, and maintained by Defendants is permanent

13  and cannot be abated. Abatement is impractical because up to 97% of the property is estimated to need

14  retesting and possible remediating. Tetra Tech alone was paid $300 million to test and remediate the

15  property. A review of Tetra Tech's work will cost in excess of $300 million. Further, such remediation

16  does not resolve the harm incurred as a byproduct of Defendants' actions.

17       82.    As a direct and proximate result of the nuisance created and maintained by Defendants,

18  Plaintiffs have been and will be further damaged, in a sum to be established by proof at trial, by the

19  diminution in the value of, and future harm to, their property, as more fully described above.

20  **THIRD CAUSE OF ACTION**

21  **UNFAIR AND UNLAWFUL COMPETITION**

22  **Violations of Business and Professions Code Section 17200, *et seq.***

23  **(Against All Defendants)**

24       83.    Plaintiffs hereby re-allege and incorporate herein by reference each and every allegation

25  contained in the previous paragraphs as though fully set forth herein.

26       84.    Defendants, and each of them, are "persons" as defined under Bus. & Prof. Code

27  Section 17021.

28       85.    At a minimum, each Defendant is named in this Cause of Action for its activities that

1    occurred within four years of the filing of this action. Plaintiffs reserve the right to prove at trial that

2    the full extent of the Defendants' acts of Unfair Competition was not known to Plaintiffs until recently,

3    and Plaintiffs also reserve the right to demonstrate that tolling extends the statute of limitations

4    applicable to Plaintiffs' claims against Defendants.

5        86.    Business and Professions Code Section 17200 (§ 17200) prohibits any "unlawful, unfair

6    or fraudulent business act or practice."

7        87.    Defendants have engaged in unlawful, unfair, and fraudulent business practices in

8    violation of Section 17200 as set forth above.

9        88.    Defendants' business practices, as described in this Complaint, are deceptive and violate

10   Section 17200 because the practices are likely to deceive consumers in California.

11       89.    Defendants made or disseminated false and misleading statements regarding the

12   contamination and/or testing and remediation of HPNS, including Parcel A and The SF Shipyard, or

13   caused false and misleading statements to be made or disseminated, that were likely to deceive the

14   public. Defendants' statements, which are deceptive and misleading in their own right, render even

15   Defendants' seemingly truthful statements about the contamination of HPNS false and misleading. All

16   of this conduct, separately and collectively, was likely to deceive The SF Shipyard community home

17   purchasers who purchased the homes as residences or investment properties and are now confronted

18   with the aftermath of the sites' continued contamination of HPNS and questions regarding the

19   environmental safety of The SF Shipyard.

20       90.    Defendants' business practices as describe in this Complaint are unlawful and violate

21   Section 17200. These unlawful practices include, but are not limited to:

22       •    Defendants violated the California Civil Code by failing to properly disclose the
         continued toxic contamination of HPNS. Cal. Civ. Code § 1102.13;
23

24       •    Defendants failed to provide good faith disclosures upon the transfer of The SF
         Shipyard properties to purchasers, in violation of Cal. Civ. Code § 1102.7;
25

26       •    Defendants made or disseminated, directly or indirectly, untrue, false, or misleading
         statements about HPNS, or caused untrue, false, or misleading statements about HPNS to be made or
27       disseminated to the general public, including those individuals that purchased property at The SF
         Shipyard, in violation of Bus. & Prof. Code § 17500.
28

16
COMPLAINT FOR DAMAGES

91.     A violation of Section 17200 may be predicated on the violation of any state or federal law. All of the acts described herein, as violations of Cal. Civ. Code § 1102.13, Cal. Civ. Code §1102.7, and Bus. & Prof. Code § 17500, are unlawful and in violation of public policy, and are immoral, unethical, oppressive, fraudulent and unscrupulous and thereby constitute unfair, unlawful, and/or fraudulent business practices in violation of Section 17200.

92.     By and through their unfair, unlawful, and/or fraudulent business practices described herein, Defendants have obtained valuable recompense, and have deprived Plaintiffs of valuable rights and benefits guaranteed by law, all to Plaintiffs' detriment.

93.     Plaintiffs suffered economic injury as a direct result of Defendants' wrongful conduct.

94.     Defendants' business practices as described in this Complaint are unfair and violate Section 17200 because they offend established public policy, and because the harm they cause to consumers in California greatly outweighs any benefits associated with those practices.

95.     As a direct and proximate result of the foregoing acts and practices, Defendants have received, or will receive, income, profits, and other benefits associated with those practices, which they would not have received if they had not engaged in violations of the Unfair Competition Law described in this Complaint.

96.     As a direct and proximate result of the foregoing acts and practices, Defendants have obtained an unfair advantage over similar businesses that have not engaged in such practices.

## FOURTH CAUSE OF ACTION

### INTENTIONAL MISREPRESENTATION

#### (Against All Defendants)

97.     Plaintiffs re-allege and incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint as though fully alleged in this Cause of Action.

98.     Before, during, and after the construction of the homes at The SF Shipyard, Defendants, and/or each of them, knew about the former industrial and nuclear activities conducted at HPNS, specifically that HPNS had been and presently was considered an active Superfund site and hazardous due to nuclear and toxic waste.

99.     In addition, Defendant Tetra Tech and/or its officers, employees, and/or agents

1    intentionally and fraudulently misrepresented to various government agencies the level of

2    contamination and the results of tests and cleanup of HPNS, including Parcel A and The SF Shipyard.

3    Defendant Tetra Tech and/or its officers, employees, and/or agents also intentionally withheld

4    materially relevant and important results from the government agencies which indicated that HPNS,

5    including in and around Parcel A and The SF Shipyard, was environmentally contaminated.

6    Defendants did so knowing that these intentional misrepresentations and/or omissions would lead to

7    the desired government approval required for development and sale of the parcels for residential and

8    commercial use and that persons such as Plaintiffs would purchase environmentally contaminated

9    property unknowingly. These misrepresentations and/or omissions resulted in a fraudulently obtained

10   government approval for development of the property, which in turn led to the development and sale of

11   the parcels under the false premise that the parcels had been properly remediated and the soil sampling

12   testing results were proof of such. Had Plaintiffs known the truth of Tetra Tech's remediation work (or

13   lack thereof) and falsified soil sample testing results, Plaintiffs would not have purchased their

14   properties. Such fraudulent misrepresentations were done with a conscious disregard for the rights and

15   safety of Plaintiffs, as well as the general public, and Defendants knew or should have known that such

16   fraudulent misrepresentations would be relied on by Plaintiffs and the general public that HPNS,

17   including Parcel A and The SF Shipyard, would be environmentally safe for use.

18           100.    Defendants Lennar, HPS1 Block 50, HPS1 Block 51, HPS1 Block 53, HPS1 Block 54,

19   FivePoint and/or HPS Development, and/or their officers, employees, and/or agents acquired Parcel A

20   in or around 2004, and have maintained a continuous and demonstrable presence within the Shipyard

21   community to date. Upon information and belief, Defendants Lennar, HPS1 Block 50, HPS1 Block 51,

22   HPS1 Block 53, HPS1 Block 54, FivePoint, and/or HPS Development had actual and/or constructive

23   notice that Defendant Tetra Tech was not performing its contractual duties and failed to perform

24   remediation work and accurate soil sample testing at HPNS, including in and around Parcel A.

25           101.    Despite this actual and/or constructive notice, Lennar, HPS1 Block 50, HPS1 Block 51,

26   HPS1 Block 53, HPS1 Block 54, FivePoint and/or HPS Development continued to advertise and

27   market residential properties at The SF Shipyard as environmentally safe without notifying future

28   homeowners of Tetra Tech's acts and omissions in regards to the remediation and soil sample testing at

1    HPNS, including in and around Parcel A and The SF Shipyard.  At all relevant times, Defendants

2    Lennar, HPS1 Block 50, HPS1 Block 51, HPS1 Block 53, HPS1 Block 54, FivePoint, and/or HPS

3    Development continued to represent to current and prospective homeowners at The SF Shipyard that

4    HPNS, including Parcel A and The SF Shipyard, was a safe and inhabitable community free of any

5    toxic or nuclear materials.

6       102.    Despite being the owner of said property and marketing and selling the property for

7    residential and commercial sale, and continuing to misrepresent that the land safe to live in and was

8    free of nuclear and toxic waste, Defendants Lennar, HPS1 Block 50, HPS1 Block 51, HPS1 Block 53,

9    HPS1 Block 54, FivePoint, and/or HPS Development knew that they could not verify such statements

10    and that in fact, such statements were based on fraud and misrepresentations.

11       103.    Defendants Lennar, HPS1 Block 50, HPS1 Block 51, HPS1 Block 53, HPS1 Block 54,

12    FivePoint and/or HPS Development acted in conscious disregard of the safety of Plaintiffs and the

13    public, by ignoring the known, probable and foreseeable significant health and safety risks to Plaintiffs

14    and the public. Instead, Defendants Lennar, HPS1 Block 50, HPS1 Block 51, HPS1 Block 53, HPS1

15    Block 54, FivePoint and HPS Development advertised that the Shipyard was environmentally safe with

16    the intent to convince Plaintiffs that HPNS was a safe and healthy place to live so as to induce

17    Plaintiffs' and others to purchase property at The SF Shipyard. Defendants failed to disclose the

18    existence of continued toxic contamination of the residential parcels at The SF Shipyard. Moreover,

19    Plaintiffs are informed, believe, and thereon allege that Defendants failed to disclose, and continue to

20    fail to disclose these hazardous materials to all purchasers and future purchasers of the homes at The

21    SF Shipyard.

22       104.    The intentional failure to disclose the presence of toxic contamination on the site by

23    Defendants was fraud by omission. Plaintiffs were induced to purchase their residences based on

24    Defendants' fraud by omission.

25       105.    When Defendants made these representations, Defendants knew them to be false, and

26    these representations were made by Defendants with the intent to defraud and deceive Plaintiffs and

27    with the intent to induce Plaintiffs to act in the manner herein alleged.

28       106.    As a result of Defendants' intentional misrepresentations, by omission or otherwise,

1  Plaintiffs took the actions herein alleged and were ignorant of the continued existence of the toxic

2  contaminants. Plaintiffs could not, in the exercise of reasonable diligence, have discovered that

3  Defendants had acted unlawfully, and that the area was still contaminated.

4       107.   As alleged above, Defendants, and each of them, at all relevant times, made and

5  disseminated false or misleading statements about the safety and value of property at The SF Shipyard

6  or caused false or misleading statements about safety and value of the property at The SF Shipyard

7  Property to be made or disseminated to the public.

8       108.   As alleged above, Defendants, and each of them, at all relevant times, made statements

9  to promote the sale or transfer of parcels at The SF Shipyard that omitted or concealed material facts

10 about toxin levels and toxic contamination of the underlying property. Furthermore, Defendants failed

11 to correct said prior misrepresentations and omissions. Defendants' omissions, which are false and

12 misleading in their own right, render even their seemingly truthful statements about HPNS, including

13 Parcel A and The SF Shipyard false and misleading.

14      109.   As alleged above, Defendants' statements about the status of toxic contamination of

15 HPNS, including Parcel A and The SF Shipyard, were not supported by or were contrary to the

16 scientific evidence, as confirmed by the EPA and U.S. Navy.

17      110.   As alleged above, Defendants' conduct, separately and collectively, was likely to

18 deceive home owners who purchased property for residential or investment purposes.

19      111.   At the time they made or disseminated false and misleading statements or caused these

20 statements to be made or disseminated, Defendants, and each of them, knew and should have known

21 that the statements were false or misleading and therefore likely to deceive the public. In addition,

22 Defendants knew and should have known that their false and misleading advertising created a false or

23 misleading impression of the investment prospects, community development, and toxic contamination

24 levels of HPNS, including but not limited to Parcel A and The SF Shipyard.

25      112.   Such misrepresentation and failures to disclose information regarding the actual existing

26 nature of the nuclear and toxic waste at HPNS, including Parcel A and The SF Shipyard, subjects

27 Defendants to damages pursuant to California Civil Code Section 1102.13.

28      113.   Plaintiffs purchased real property either directly or indirectly from Defendants.

1  Defendants knew that the land they were selling at SF Shipyards to residential purchasers, and/or the

2  land immediately adjacent to the land they were selling, was contaminated with radioactive and/or

3  industrial waste above levels acceptable for development.

4       114.   Defendants sold new homes while failing to disclose the presence of un-remediated

5  local radioactive and/or industrial waste that, individually and collectively, can have deleterious health

6  effects on residents, in violation of Civ. Code § 1102.13.

7       115.   Defendants' failure to make the requisite disclosures induced Plaintiffs to purchase

8  properties they never would have purchased, and those properties are now declining in value and

9  desirability due to the contamination on and/or around the property, as well as questions regarding the

10  environmental safety of The SF Shipyard, which was unknown and undisclosed at the time of sale. In

11  doing the acts herein alleged, Defendants acted with oppression, fraud, and malice, and Plaintiffs are

12  entitled to punitive damages.

13       116.   Therefore, Plaintiffs have suffered, and will continue to suffer, damages which will be

14  ascertained according to proof at trial.

15       117.   Plaintiffs did not know, and could not reasonably have discovered, information

16  regarding Tetra Tech's acts and omissions, nor could they have reasonably discovered, vetted or

17  verified the claims made by Lennar, HPS1 Block 50, HPS1 Block 51, HPS1 Block 53, HPS1 Block 54,

18  FivePoint and HPS Development regarding the environmental condition of the land, including whether

19  the toxic and nuclear waste had been properly remediated and removed from the land prior to their

20  home purchases. Defendants knew that Plaintiffs did not know, and could not reasonably have

21  discovered, this information. Such information significantly and negatively affected the value and

22  desirability of the property.

23       118.   Defendants' failure to disclose this information was a substantial factor in causing

24  Plaintiffs' harm. As a proximate result of Defendants' fraud and the facts herein alleged, Plaintiffs have

25  been damaged in an amount to be determined at the time of trial.

26  //

27  //

28  //

## FIFTH CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION

#### (Against All Defendants)

119.    Plaintiffs hereby re-allege and incorporate herein by reference each and every allegation contained in the previous paragraphs as though fully set forth herein.

120.    Before, during, and after the construction of the homes at The SF Shipyard, Defendants knew or should have known about the former industrial and nuclear activities conducted at HPNS, specifically that HPNS had been and presently was considered an active Superfund site and hazardous due to nuclear and toxic waste. Plaintiffs are informed, believe and thereon allege that the industrial and nuclear toxic contamination has affected the homes located therein.

121.    Defendants owed a duty to residential purchasers to inform them of potential radioactive and/or industrial waste on or near the real property for sale. To the extent Defendants represented that the land had been properly remediated or else not in need of remediation, that was untrue. The failure to disclose the present toxic contamination of the site or questions regarding the environmental safety of the site by Defendants was misrepresentation by omission.

122.    Plaintiffs were induced to purchase their residence based on Defendants' misrepresentation by omission. When Defendants made these representations, Defendants knew or should have known them to be false, and these representations were made by Defendants with the intent that Plaintiffs would and should rely on their representations, and with the intent to induce Plaintiffs to act in the manner herein alleged. Defendants had no reasonable grounds for believing such misrepresentations to be true when they were made.

123.    Plaintiffs, at the time these representations were made and at the time Plaintiffs took the actions herein alleged, reasonably relied on Defendants' representations. Plaintiffs were ignorant of the continued existence of the toxic contaminants, and Plaintiffs could not, in the exercise of reasonable diligence, have discovered that Defendants had acted unlawfully, and that the area was still contaminated, or that there were lingering questions and concerns regarding the environmental safety of HPNS, including Parcel A and The SF Shipyard.

124.    As a proximate result of Defendants' fraud and the facts herein alleged, Plaintiffs have

1   been harmed and damaged in an amount to be determined at the time of trial. Plaintiffs' reliance on

2   Defendants' misrepresentations, by omission or otherwise, was a substantial factor in causing this

3   harm.

### SIXTH CAUSE OF ACTION

### NEGLIGENCE

### (Against All Defendants)

7       125.    Plaintiffs hereby re-allege and incorporate herein by reference each and every allegation

8   contained in the previous paragraphs as though fully set forth herein.

9       126.    Defendants, and/or each of them, owed duties to Plaintiffs, including, but not limited to:

10   (1) the duty to warn the residents of potential, probable, and/or significant risks to human health; (2)

11   the duty to provide complete disclosures under Cal. Civ. Code §1102.13; (3) the duty to not withhold

12   material information regarding contamination from the government and Plaintiffs; and (4) the duty to

13   properly remediate HPNS, including Parcel A and The SF Shipyard.

14       127.    Defendants, and/or each of them, breached these duties by the aforementioned conduct

15   in this Complaint and including but not limited to:

16       •    Falsifying data and reports;

17       •    Failing to investigate;

18       •    Failing to implement effective controls and procedures to address data falsification;

19       •    Misrepresenting the contamination of HPNS;

20       •    Permitting the transfer and sale of real property contaminated by nuclear and toxic

21   waste; and

22       •    Failing to complete proper disclosures that would have revealed the toxic contamination

23   of the property.

24       128.    As a result of the aforementioned conduct, Plaintiffs have suffered damages directly,

25   proximately and foreseeably caused by Defendants' said breaches. It was reasonably foreseeable that

26   Defendants' breaches of the duties set forth in this Cause of Action would cause harm to Plaintiffs in

27   the form of diminution in value of property at The SF Shipyard but for Defendants' wrongful conduct,

28   and, that it would induce Plaintiffs to purchase property they would otherwise not have purchased.

Thus, Plaintiffs has suffered monetary losses proximately caused by Defendants' breaches of their duties set forth in this Cause of Action.

129.   Defendants' breaches of duties that they owed to Plaintiffs are the proximate cause of Plaintiffs' injuries, and Plaintiffs are entitled to all damages allowable by law, costs and attorneys' fees, and any other relief the Court deems necessary and appropriate.

130.   Defendants' negligent acts as set forth herein were made with oppression, fraud, conscious disregard of the rights and safety of Plaintiffs, or malice, entitling Plaintiffs to exemplary damages.

## SEVENTH CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Against All Defendants)

131.   Plaintiffs hereby re-allege and incorporate herein by reference each and every allegation contained in the previous paragraphs as though fully set forth herein.

132.   Defendants' conduct in connection with their, or other Defendants', acts and omissions in regard to remediation work and soil sample testing at HPNS, including Parcel A and The SF Shipyard, as well as the misrepresentations and fraud by omission made to Plaintiffs, were carried out despite Defendants' knowledge that the toxic and nuclear materials were present and were known to be and were specifically designated as hazardous to human health. Defendants choose to place their interests ahead of the Plaintiffs and the affected community.

133.   Defendants, at all time relevant, knew of the existence of Plaintiffs and the affected community, knew that Plaintiffs would be exposed to the toxic and nuclear materials as a result of their conduct, and knew that the discovery of these facts by Plaintiffs would cause Plaintiffs to suffer injury, including severe emotional distress. Nevertheless, Defendants intentionally failed to remedy the problem.

134.   As a direct and proximate result of said wrongful conduct, Plaintiffs have suffered and continued to suffer, and will continue to suffer pain, discomfort, anxiety, fear, worries, stress, and mental and emotional distress, all to Plaintiffs' general damage in an amount to be set forth according

1   to proof at trial.

2       135.   Defendants' conduct in connection with their or other Defendants' acts and omission in

3   regards to remediation work and soil sample testing, as well as the misrepresentations and fraud by

4   omission made to Plaintiffs, was undertaken with reckless disregard for the wellbeing of Plaintiffs and

5   the affected community.  Defendants' actions were oppressive, malicious, grossly negligent, willful

6   and wanton, and Defendants have exhibited a callous disregard for the Plaintiffs' rights and health. As

7   such, Plaintiffs are entitled to recover punitive damages.

8   **EIGHTH CAUSE OF ACTION**

9   **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

10  **(Against All Defendants)**

11      136.   Plaintiffs hereby re-allege and incorporate herein by reference each and every allegation

12  contained in the previous paragraphs as though fully set forth herein.

13      137.   Defendants' conduct in connection with their, and other Defendants', acts and omission

14  in regards to remediation work and soil sample testing at HPNS, including Parcel A and The SF

15  Shipyard, as well as the misrepresentations and fraud by omission made to Plaintiffs, were carried out

16  despite Defendants' knowledge that the toxic and nuclear materials were present and were known to be

17  and were specifically designated as hazardous to human health.  Defendants chose to place their

18  interests ahead of the Plaintiffs and the affected community.

19      138.   Defendants, at all time relevant, knew of the existence of Plaintiffs and the affected

20  community, knew that Plaintiffs would be exposed to the toxic and nuclear materials as a result of their

21  conduct, and knew that the discovery of these facts by Plaintiffs would cause Plaintiffs to suffer injury,

22  including severe emotional distress.  Nevertheless, Defendants negligently failed to remedy the

23  problem.

24      139.   As a direct and proximate result of Defendants' negligent conduct as alleged herein,

25  Plaintiffs suffered severe and extreme emotional distress.

26      140.   As a further and direct proximate result of said wrongful conduct, Plaintiffs have

27  suffered, and will continue to suffer pain, discomfort, anxiety, fear, worries, stress, and mental and

28  emotional distress, all to Plaintiffs' general damage in an amount to be set forth according to proof at

1  trial.

2  ## NINTH CAUSE OF ACTION

3  ### STRICT LIABILITY FOR ULTRA HAZARDOUS ACTIVITY

4  **(Against Defendants** Tetra Tech, Inc. and Tetra Tech EC, Inc.)

5      141.   Plaintiffs hereby re-allege and incorporate herein by reference each and every allegation

6  contained in the previous paragraphs as though fully set forth herein.

7      142. · As alleged above, Defendants have been designated as dischargers and as responsible

8  parties and as such, they knew or should have known that the their failure to use reasonable care in

9  remediating, controlling, monitoring, maintaining and operating HPNS, including Parcel A and The SF

10  Shipyard, and in collecting, testing, using, storing, disposing of, and causing to be disposed of nuclear

11  materials and hazardous substances, would create and has created actual harm to the persons, animals

12  and lands of others, including Plaintiffs, from the resulting contamination of the environment in and

13  around HPNS, including Parcel A and The SF Shipyard.  Defendants knew or should have known that

14  there existed and still exists, a certainty of harm to others, including Plaintiffs, that would result from

15  the failed remediation work and fraudulent soil sample testing, of the environment in and around

16  HPNS, including Parcel A and The SF Shipyard.

17      143.   Defendants' remediating, controlling, monitoring, maintaining and operating of HPNS,

18  including Parcel A and The SF Shipyard, as well as the handling of nuclear and toxic materials and

19  hazardous substances, constitutes an ultra-hazardous activity.

20      144.   As a direct and proximate result of Defendants' remediating, controlling, monitoring,

21  maintaining and operating of HPNS, including Parcel A and The SF Shipyard, as well as the handling

22  of nuclear and toxic materials and hazardous substances, Plaintiffs have suffered and will continue to

23  suffer consequential, incidental and general damages to be proven at trial, for which Defendants are

24  strictly liable.  Such damages include, but are not limited to, physical, mental, emotional and nervous

25  distress, pain and suffering (including fear of cancer), and diminution of property value as a result of

26  Plaintiffs exposure to chemicals, contaminants and hazardous substances.

27      145.   Defendants' actions in failing to disclose, fraudulently misrepresenting and deceiving

28  the Plaintiffs and the public about the failed remediation work, falsified soil sample testing, and

1  continued existence of nuclear and toxic materials in and around HPNS, Parcel A, The SF Shipyard,

2  and ultimately Plaintiffs' property, were willful, malicious, and intentional, from which Plaintiffs have

3  suffered great harm.  Moreover, the Defendants consistently failed to disclose to the Plaintiffs and the

4  public that exposure or ingestion of the toxic and nuclear materials and hazardous substances was

5  harmful to their health.  Defendants' wrongful conduct was known and deliberate, and Defendants

6  acted with conscious and reckless disregard of the hazards and threats to Plaintiffs and the public.

7  146.    Defendants' conduct was outrageous, willful, malicious and intentional, causing the

8  Plaintiffs great and irrefutable harm, and thus entitling Plaintiffs to recover punitive and exemplary

9  damages from Defendants.

10  **PRAYER FOR RELIEF AND DEMAND FOR JURY**

11  WHEREFORE, Plaintiffs respectfully pray that this Court grant the following relief:

12  1.    Judgment in favor of Plaintiffs in a final order against all Defendants;

13  2.    A declaration that Defendants have created a public nuisance in violation of Civil Code

14  Sections 3479 and 3480;

15  3.    A declaration that Defendants have created a private nuisance in violation of Civil Code

16  Section 3479;

17  4.    An order that Defendants compensate Plaintiffs for damages to their property, including

18  but not limited to the purchase price and/or the valuation of the property;

19  5.    A declaration that Defendants have engaged in unlawful, unfair, and deceptive business

20  acts and practices in violation of the Unfair Competition Law;

21  6.    A declaration that Defendants have made, disseminated as part of a plan or scheme, or

22  aided and abetted the dissemination of false and misleading statements in violation of the False

23  Advertising Law;

24  7.    An order that Defendants pay restitution to Plaintiffs of any money acquired by

25  Defendants' false and misleading advertising, pursuant to the False Advertising Law;

26  8.    Damages in a sum to be established by proof at trial equal to the diminution in the value

27  of, and future harm to, Plaintiffs' property; plus interest on that amount at the legal rate until paid;

28  9.    An award of punitive damages;

1    10.    An award of the costs of investigation, reasonable attorneys' fees, and all costs and

2  expenses of the litigation; and

3    11.    Such further and additional relief as the Court deems proper.

4                                    **JURY TRIAL DEMAND**

5              Plaintiffs demand a trial by jury.

6

7  Dated:  August 19, 2019                          BOWLES & VERNA LLP

8

9                                              By: _____

10                                                 BRADLEY R. BOWLES
                                                   JONATHAN W. LEE
11                                                 Attorneys for Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Bradley R. Bowles/Jonathan W. Lee 202722/285323
BOWLES & VERNA LLP
2121 N. California Blvd., Suite 875
Walnut Creek, CA 94596
TELEPHONE NO.: (925) 935-3300   FAX NO.: (925) 935-0371
ATTORNEY FOR *(Name):* Plaintiffs

FOR COURT USE ONLY

F I L E D
Superior Court of California
County of San Francisco

AUG 2 0 2019

CLERK OF THE COURT
BY: _____
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 941
BRANCH NAME:

CASE NAME: SAN FRANCISCO SHIPYARD RESIDENTS v. Tetra Tech, Inc.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [X] Unlimited  [ ] Limited | [ ] Counter   [ ] Joinder | CGC-19-578509 |
| (Amount demanded exceeds $25,000) | (Amount demanded is $25,000 or less) | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: |
| | | DEPT: |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[X] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [X] is   [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [X] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [X] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [X] monetary  b. [X] nonmonetary; declaratory or injunctive relief  c. [X] punitive
4. Number of causes of action *(specify):* 9
5. This case [ ] is   [X] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: August 19, 2019

Jonathan W. Lee
(TYPE OR PRINT NAME)          ▶          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

CEB Essential Forms
ceb.com

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)-Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
        Wrongful Death
Product Liability *(not asbestos or
    toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice-
        Physicians & Surgeons
    Other Professional Health Care
        Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
        and fall)
    Intentional Bodily Injury/PD/WD
        (e.g., assault, vandalism)
    Intentional Infliction of
        Emotional Distress
    Negligent Infliction of
        Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)*  (08)
Defamation (e.g., slander, libel)
    (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
        *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
        Contract  *(not unlawful detainer
        or wrongful eviction)*
    Contract/Warranty Breach-Seller
        Plaintiff  *(not fraud or negligence)*
    Negligent Breach of Contract/
        Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case-Seller Plaintiff
    Other Promissory Note/Collections
        Case
Insurance Coverage  *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property  *(not eminent
    domain, landlord/tenant, or
    foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38)  *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ-Administrative Mandamus
    Writ-Mandamus on Limited Court
        Case Matter
    Writ-Other Limited Court Case
        Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal-Labor
        Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400-3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of
        County)
    Confession of Judgment *(non-
        domestic relations)*
    Sister State Judgment
    Administrative Agency Award
        *(not unpaid taxes)*
    Petition/Certification of Entry of
        Judgment on Unpaid Taxes
    Other Enforcement of Judgment
        Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
        harassment)*
    Mechanics Lien
    Other Commercial Complaint
        Case *(non-tort/non-complex)*
    Other Civil Complaint
        *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
        Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief from Late
        Claim
    Other Civil Petition

CEB | Essential
ceb.com | Forms

8418-000